UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
U2 HOME ENTERTAINMENT, INC.,

                Plaintiff,

         - against -

RONG FA LIANG *individually and d/b/a/*
"Ming Ja Audio" and "K&D,"

                Defendant.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

08 CV 3339 (DLI)

On August 15, 2008, plaintiff U2 Home Entertainment, Inc. ("U2 Home") commenced this action against defendant Rong Fa Liang, individually and doing business as "Ming Ja Audio" and "K&D," alleging violations of copyright and trademark laws, 17 U.S.C. § 101 et seq. and 15 U.S.C. § 1125(a), based on the unauthorized duplication, importation and/or distribution by defendant of copyrighted motion pictures in which U2 Home holds exclusive distribution rights ("U2 Home's Motion Pictures").

Despite proper service, defendant has not answered or otherwise moved in response to the Complaint. On November 14, 2008, plaintiff filed a motion for default judgment, and on March 26, 2009, a notation of default was entered by the Clerk of the Court. Presently pending before this Court on a referral from the district court is plaintiff's default motion for statutory damages, attorneys' fees if statutory damages are not awarded, and a permanent injunction against defendant.

FACTUAL BACKGROUND

Plaintiff U2 Home is a motion picture company, doing business under the names

"Century Home Entertainment," "New Image Audio & Video," and "Tai Seng Entertainment" (formerly Tai Seng Video Marketing). (Compl.[1] ¶ 5). Plaintiff has obtained exclusive authority from various Asian language theatrical motion picture production and distribution companies and television program owners in Asia to distribute their works and currently holds United States copyrights to numerous of these Asian language works ("U2 Home's Motion Pictures").[2] (Pl. Mem.[3] at 2; Compl. ¶ 9; Tse Supp. Aff.[4] ¶¶ 8-13). U2 Home imports, manufactures or authorizes the manufacture of the motion pictures, and distributes these authorized copies in Asian-American communities throughout the United States, including New York. (Pl. Mem. at 2-3). All authorized copies of U2 Home's Motion Pictures marketed in the United States bear the trademark TAI SENG ENTERTAINMENT. (Compl. ¶ 19). Plaintiff owns United States Trademark Registration 2,894,529 TAI SENG ENTERTAINMENT with design, which was registered on October 19, 2004 ("TAI SENG trademark"). (Id. ¶ 18).

Defendant Rong Fa Liang operates a retail store known as "Ming Ja Audio" or "K&D"

---

[1]Citations to "Compl." refer to plaintiff's Complaint, dated August 15, 2008.

[2]All of the motion pictures for which damages are being sought in this case are registered under the Copyright Act, 17 U.S.C. § 410. (Pl. Mem. at 2; Affidavit of Mason Tse dated October 28, 2008, ("Tse Aff.") ¶ 8, Ex. B, which is attached as Exhibit D to plaintiff's motion for default judgment, submitted on November 14, 2008). U2 Home does not seek damages for those motion pictures seized for which applications for copyright registration were pending at the time of the seizure. (Pl. Mem. at 9).

[3]Citations to "Pl. Mem" refer to the Memorandum of Law dated October 29, 2008 and submitted in support of plaintiff's motion for a default judgment on November 14, 2008.

[4]On July 16, 2009, the Court issued an Order directing plaintiff to submit supplemental documentation demonstrating the basis on which it claims exclusive rights to U2 Home's Motion Pictures. Citations to "Tse Supp. Aff." refer to the Supplemental Affirmation of Mason Tse submitted in response to this Order on July 29, 2009.

that distributes Asian language motion pictures and television series. (Compl. ¶ 6). Defendant is not registered to do business in the State of New York. (Compl. ¶ 6). Plaintiff asserts that it has never granted to defendant the right to import, reproduce or distribute copies of U2 Home's Motion Pictures. (Pl. Mem. at 3; Compl. ¶ 13).

U2 Home has previously taken action against this defendant for infringing its copyrights. See U2 Home Entm't, Inc. v. Liang, No. 07 CV 3899 (E.D.N.Y. dismissed Nov. 7, 2007). In a prior lawsuit filed against defendant in September 2007, the district court issued an Order of Seizure on September 21, 2007, and on October 2, 2007, approximately 134 unauthorized discs[5] containing reproductions of U2 Home's Motion Pictures were seized from defendant. (Pl. Mem. at 3). Following the seizure, defendant closed his business, and thereafter, on November 7, 2007, the Court dismissed the action without prejudice at U2 Home's request. However, defendant reopened the business "sometime thereafter" at the same address, and the store again began selling unauthorized copies of U2 Home's copyrighted movies. (Pl. Mem. at 3; see Compl. ¶ 6; Amended Complaint ¶ 3, U2 Home Entm't, Inc. v. Liang, No. 07 CV 3899 (E.D.N.Y. filed Oct. 24, 2007)).

Plaintiff filed this action on August 15, 2008, alleging that within the prior three years,[6] defendant has unlawfully engaged in or solicited the importation, duplication, and distribution of

---

[5]Plaintiff's Memorandum describes the seizure of 134 unauthorized discs, but a November 6, 2007 status letter from Mr. Lee to Judge Irizarry states that 646 illegally duplicated discs were impounded by the United States Marshal.

[6]Based on the allegations in the Complaint, it appears that the instant case encompasses the same claims raised by plaintiff in its previous case against defendant. However, the damages sought here appear to be limited to the materials seized as part of the current case filed in August 2008.

U2 Home's Motion Pictures without authorization from U2 Home. (Compl. ¶¶ 11-12). On August 18, 2008, an Order of Seizure and Order to Show Cause was issued by the Honorable Sandra L. Townes, providing for the seizure of unauthorized copies of U2 Home's Motion Pictures and any duplication equipment from defendant. Approximately 899 unauthorized videodiscs were seized from defendant's retail store on August 26, 2008. (Pl. Mem. at 4; Lee Aff. #1[7] ¶ 4; Tse Aff.[8] ¶ 6). Plaintiff asserts that it has never authorized defendant to copy or distribute its Motion Pictures and that defendant's actions constitute an infringement of plaintiff's exclusive rights under copyright law. (Id. ¶¶ 13-14). Plaintiff further asserts that defendant's actions were deliberate and willful. (Id. ¶ 15). Plaintiff also alleges that defendant used designations indistinguishable from the TAI SENG trademark to advertise, promote and distribute the unauthorized copies. (Id. ¶¶ 20-22). By misappropriating the TAI SENG trademark, defendant's actions confuse and deceive customers by causing them to believe that defendant's goods are authorized by plaintiff and are of the same quality as plaintiff's goods. Plaintiff further claims that as a result, defendant has unfairly benefitted from plaintiff's marketing and reputation. (Id. ¶ 24).

In their initial motion papers, plaintiff seeks total damages in the amount of $1,011,750.00, representing the statutory minimum of $750 per infringed work multiplied by the 1,349 works contained on the 899 discs seized on August 26, 2008, for which plaintiff holds

---

[7]Citations to "Lee Aff. #1" refer to the Affirmation of Walter-Michael Lee dated October 29, 2008, attached as Exhibit C to plaintiff's motion for default judgment submitted on November 14, 2008.

[8]Citations to "Tse Aff." refer to the Affidavit of Mason Tse dated October 28, 2008, and attached as Exhibit D to plaintiff's motion for default judgment submitted on November 14, 2008.

registered U.S. copyrights. (Id.) On July 29, 2009, U2 Home submitted documentation of its rights to 1,127 of these works referred to as the "TVB Series." In a letter accompanying this submission, plaintiff indicated that obtaining documentation for the remaining works would be time-consuming and requested that the Court award damages only for the TVB Series, an award which would total $845,250.00. In the alternative, if plaintiff is not awarded statutory damages, it seeks attorneys' fees. (Pl. Mem. at 18). In addition, plaintiff seeks a permanent injunction prohibiting defendant from the alleged activities constituting infringement of U2 Home's copyrights and trademark. (Pl. Mem. at 19).

## DISCUSSION

A. Default Judgment

   1) Standards

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). As a threshold issue, Rule 55 sets forth a two-step process that first requires the entry of a default through a notation on the record that the party has defaulted, and then entry of a default judgment, which is the final action in the case. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, by notation of the party's default on the clerk's record of the case. See id. After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default

pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b).

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). Although an application for entry of default should be made before a motion for entry of default judgment, courts will generally excuse a failure to obtain entry of default before the motion for default judgment is made. See, e.g., Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *1-2 (S.D.N.Y. Oct. 15, 1992). Here, plaintiff submitted a request for both entry of default and default judgment on November 14, 2008. The clerk of court entered a default on March 26, 2009.

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The court possesses significant discretion and may consider a number of factors in

6

deciding whether or not to grant a default judgment, including whether the grounds for default are clearly established, and the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2. Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright et al., Federal Practice and Procedure, §§ 2685, 2688, at 32-38, 57-63 (3d ed. 1998).

### 2) Application

Having reviewed the prior proceedings in this case, the Court respectfully recommends that a default judgment be entered in favor of plaintiff. An Order of Seizure was executed on August 26, 2008 by the United States Marshal, accompanied by U2 Home's representatives. At that time, 899 unauthorized videodiscs of U2 Home's motion pictures were seized from defendant's retail store. (Pl. Mem. at 4; Lee Aff #1 ¶ 4; Tse Aff. ¶ 6). Plaintiff has submitted copies of copyright registrations for all of the works seized on August 26, 2008 for which it initially requested statutory damages. (Tse Aff. ¶ 8, Ex. B). Plaintiff has also submitted documentation demonstrating that it holds the exclusive rights to the TVB Series works for which it is now requesting damages.[9] (Tse Supp. Aff. ¶¶ 8-13, Exs. A-D). Defendant has not

---

[9]The copyright registrations for these works are listed in the names of entities other than U2 Home. (See Tse Aff. ¶ 8, Ex. B). U2 Home has submitted documentation demonstrating that through a blanket licensing agreement, it has been given the exclusive right to distribute certain of these works — the TVB Series — in the United States. (Tse Supp. Aff. ¶ 6).

responded to plaintiff's motion for default judgment or to this Court's Order permitting the submission of papers in connection with this inquest proceeding — in fact, defendant has failed to appear at all in this case. Thus, nothing before this Court disputes the veracity of plaintiff's claim that the seized works were unauthorized, that these goods bore a trademark registered by U2 Home which was used by defendant without U2 Home's consent, and that U2 Home is exclusively authorized to distribute the concerned Asian language motion pictures in the United States.

Moreover, it is beyond dispute that defendant is in default. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (holding that "[the defendant's] default is crystal clear — it does not even oppose this motion"). Defendant has not responded to the Complaint or the motion for default judgment. Given the numerous opportunities afforded defendant and his apparent lack of interest in participating in these proceedings, there is no compelling reason to delay further.

Accordingly, it is respectfully recommended that plaintiff's motion for default judgment be granted.


B. Damages and Attorneys' Fees

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L.

Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981);

Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992); Deshmukh v. Cook,

630 F. Supp. 956, 959 (S.D.N.Y. 1986). However, the plaintiff must still prove damages in an

evidentiary proceeding at which the defendant has the opportunity to contest the claimed

damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While

a default judgment constitutes an admission of liability, the quantum of damages remains to be

established by proof unless the amount is liquidated or susceptible of mathematical

computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at

*4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

While "the court must ensure that there is a basis for the damages specified in a default

judgment, it may, but need not, make the determination through a hearing." Fustok v.

Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir.

1989). Here, where the plaintiff has filed reasonably detailed affidavits, declarations and exhibits

pertaining to the damages incurred, and where the defendant has failed to make an appearance in

the case, the Court can make an informed recommendation regarding damages without an

evidentiary hearing.

Having established that defendant violated plaintiff's copyrights and trademark rights,

plaintiff seeks an award of statutory damages.

1) Statutory Damages

i) Copyright Damages

Damage awards in cases of copyright infringement are governed by Section 504(c)(1) of

the Copyright Act. Section 504(c)(1) provides in relevant part:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).

In order to recover statutory damages, plaintiff must show that the works concerned have been registered with the U.S. Copyright Office, or that registration occurred within three months after the first publication of the works in the United States. 17 U.S.C. § 412. Plaintiff has presented copies of copyright registration certificates for the works for which U2 Home requests statutory damages (Tse Aff. ¶ 8, Ex. B), as well as a list of all works seized from defendant. (Tse Aff. ¶ 6, Ex. A).

Plaintiff has also presented documentation demonstrating that rights to the works in the section of this list labeled TVB Series (see Tse Aff. ¶ 6, Ex. A) have been transferred from the entities listed on the registration certificates to U2 Home. (Tse Supp. Aff. ¶¶ 8-13, Exs. A-D). As an exclusive licensee, U2 Home may enforce the copyrights at issue as a copyright owner. See 17 U.S.C. § 201(d); U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc., No. 04 CV 6189, 2008 WL 3906889, at *5 (S.D.N.Y. Aug. 21, 2008) (citing Morris v. Bus. Concepts, Inc., 259 F.3d 65, 70 (2d Cir. 2001)).

The copyright statute itself and the cases in this circuit interpreting that statute have made it clear that the victim of a copyright infringement is entitled to choose between the actual damages suffered plus any additional profits, and statutory damages to be awarded within certain

specified limits. See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Inc., 996 F.2d 1366, 1380 (2d Cir. 1993) (permitting plaintiff to elect statutory remedy where damages were difficult to ascertain); see also N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250 (2d Cir. 1992) (noting that a copyright owner may elect statutory damages instead of other forms of monetary relief); Engel v. Wild Oats, Inc., 644 F. Supp. 1089, 1091 (S.D.N.Y. 1986) (stating that the "victim of a copyright infringement . . . may elect statutory damages to be determined, within specified limits, 'as the court considers just'").

Pursuant to this section, plaintiff has elected to seek minimum statutory damages instead of actual damages or statutory damages greater than the minimum. Where a prevailing party elects statutory damages, the question of damages is not required to be submitted to a jury, as statutory damages "may be awarded by the court in its discretion." Oboler v. Goldin, 714 F.2d 211, 212–13 (2d Cir. 1983); see 17 U.S.C. §§ 504(a)(2), (c). Thus, statutory damages are available in a case such as this where a default has entered and the plaintiff moves for a default judgment.

The Copyright Act further provides:

> In a case where the copyright owner sustains the burden of proving, and the court finds that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c)(2).[10] Although plaintiff has only requested an award of the minimum

statutory amount per work, plaintiff is actually entitled to a greater award of statutory damages

because the defendant's infringement was willful.

"Willfully" as used in 17 U.S.C. § 504(c)(2) means "'with knowledge that the

defendant's conduct constitutes copyright infringement.'" New York Chinese TV Programs, Inc.

v. U.E. Enterprises, Inc., No. 89 CV 6082, 1991 WL 113283, at *13 (S.D.N.Y. 1991) (quoting 3

Nimmer on Copyright § 14.04[B][3]). This definition of willfulness "is subject to the corollary

that reckless disregard of the copyright holder's rights (rather than actual knowledge of

infringement) suffices to warrant award of the enhanced damages." Id. at *13 (quoting

RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 779 (8th Cir. 1988)); see also

Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc., 807 F.2d 1110, 1115 (2d Cir. 1986); RSO

Records, Inc. v. Peri, 596 F. Supp. 849, 859 (S.D.N.Y. 1984); Lauratex Textile Corp. v. Alton

Knitting Mills Inc., 517 F. Supp. 900, 903 (S.D.N.Y. 1981).

In determining whether a defendant has acted willfully for purposes of this section, courts

have held that there is no need to find that the infringer acted maliciously. See Fitzgerald Publ'g

Co. v. Baylor Publ'g Co., 807 F.2d at 1115. Rather, it is sufficient to find that the defendant had

either actual or constructive knowledge that his actions constituted an infringement. See id.; see

also Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257 (2d Cir. 2005)

(holding that willful blindness to copyright holder's rights was sufficient to prove willfulness);

Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995) (stating that constructive

---

[10]The maximum statutory damages provided for in 17 U.S.C. § 504(c)(2) refers to the
maximum statutory damages available per infringed work.

knowledge or reckless disregard is sufficient to demonstrate willfulness, and may be inferred from the defendant's conduct); Twin Peaks Prods., Inc. v. Publ'ns Int'l, Inc., 996 F.2d at 1382 (stating that "[t]he standard is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility"); Engel v. Wild Oats, Inc., 644 F. Supp. at 1091–92 (finding willfulness where an art director reprinted a photograph from a copyrighted book).

It is the plaintiff's burden to show that defendant's infringement was willful. See Copyrights Act, H.R. Rep. 94-1476, at 161 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5779 (stating that "the burden of proving willfulness rests on the copyright owner"); see also Wow & Flutter Music, Hideout Records & Distribs., Inc. v. Len's Tom Jones Tavern, Inc., 606 F. Supp. 554, 556 (W.D.N.Y. 1985) (stating that "this burden can be met by showing that defendants should have known their conduct was infringing or acted in reckless disregard of plaintiffs' rights").

In this case, the defendant's behavior indicates that defendant's infringements were willful and that he had knowledge that his conduct constituted infringement of plaintiff's rights. See N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250 (2d Cir. 1992) (inferring willfulness from defendant's conduct); see also Peer Intern. Corp. v. Luna Records, Inc., 887 F. Supp. 560 (S.D.N.Y. 1995); RSO Records, Inc. v. Peri, 596 F. Supp. 849 (S.D.N.Y. 1984). Defendant was previously sued by plaintiff in another action in September of 2007 when 134 unauthorized discs were seized from defendant. (Pl. Mem. at 3). Based on this prior proceeding and the seizure of discs from his store, defendant was made aware that the motion pictures he was reproducing and distributing were subject to registered copyrights owned by another entity.

Indeed, as a result of that prior proceeding, defendant closed his business and the action was voluntarily dismissed. When defendant subsequently reopened his business and began again to sell unauthorized copies of U2 Home's Motion Pictures, deliberately using plaintiff's trademark on his counterfeited goods, defendant was acting wilfully and with the intent that consumers would believe his discs to be U2 Home's authorized products, when in fact, they were not.

In addition to the fact that defendant knew or at best recklessly disregarded the rights of plaintiff to these materials, plaintiff asserts that the marketing format used by defendant further supports the finding of wilful infringement. Specifically, plaintiff alleges that the disc format used by defendant is the format of choice for individuals producing counterfeit goods because the DVD-9 format used by defendant holds a large number of episodes on a single disc. (Pl. Mem. at 12; Tse Aff. ¶ 7). U2 Home does not use the DVD-9 format to distribute its authorized motion pictures. (Pl. Mem. at 16; Tse Aff. ¶ 7). The use of the DVD-9 format and the large number of illegal discs seized from defendant on August 26, 2008 indicates the large scale of defendant's operation. Finally, willfulness can be inferred from the defendant's failure to defend the action. See Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (drawing an inference of willfulness from defendant's failure to appear and defend the action).

Considering all of these factors, the Court finds that plaintiff has presented clear evidence that defendant acted willfully. While plaintiff correctly notes that the Court may therefore issue an increased statutory award of up to $150,000 per work infringed (Pl. Mem. at 13), plaintiff requests only the statutory minimum of $750 per work. (Pl. Mem. at 15). In evaluating plaintiff's request for minimum statutory damages, the Court must consider the purpose of statutory damages – in particular, the deterrent effect that increased statutory damages can have

on other individuals. See Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d at 1117

(discussing this and other factors in court's decision to award statutory damages); see also Fallaci

v. New Gazette Literary Corp., 568 F. Supp. at 1174 (awarding plaintiff twice the value of the

infringed right as a deterrent to future infringers).

　　With respect to the deterrent nature of statutory awards, courts consider the willfulness of

the infringement as well as the potential that the award would have a deterrent effect on the

particular defendant in the case. See Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d at

1117; see also Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc., 602 F. Supp. 151, 156 (S.D.N.Y.

1984) (awarding maximum statutory damages to deter defendant, one of the "'bad boys' of the

textile industry," who had been involved in multiple similar lawsuits); RSO Records, Inc. v. Peri,

596 F. Supp. 849, 862–63 (S.D.N.Y. 1984) (awarding maximum statutory damages per

infringement because of the estimated actual damages combined with the "large-scale and willful

infringing activity," for a total award of $1,450,000); Lauratex Textile Corp. v. Alton Knitting

Mills Inc., 517 F. Supp. 900, 903 (S.D.N.Y. 1981) (awarding maximum statutory amount in

order to deter defendant who had been sued for copyright infringement ten times in the past five

years).

　　In calculating the minimum statutory damages to be awarded for individual works

infringed, plaintiff seeks an award for some of those works, such as a multi-episode television

series, even though the episodes were registered together under the same copyright certificate.

(Pl. Mem. at 10; Tse Aff. ¶¶ 6, 8, Exs. A, B).  Copyright law provides for statutory damages

"with respect to any one work" and states that "all the parts of a compilation or derivative work

constitute one work." 17 U.S.C. § 504(c)(1).  However, the Second Circuit has awarded statutory

damages for each episode of a multi-episode television series as individually infringed "works." See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1381 (2d Cir. 1993); see also Antenna Television v. Aegean Video Inc., No. 95 CV 2328, 1996 WL 298252, at *11 (E.D.N.Y. April 23, 1996) (holding that each episode of Antenna Television's series was to be counted as an individually-protected work awarding statutory damages per episode). The court in Twin Peaks held that each teleplay for an episode of the television series "Twin Peaks" was an individual work and awarded damages for each separate episode. Unlike this case, however, the teleplay for each episode in Twin Peaks was registered on a distinct copyright certificate. 996 F.2d at 1381.

Nevertheless, the court in Twin Peaks assessed the individual episodes as individual units of production and did not rely on the number of copyright registrations in reaching its judgment. Id. at 1381. As noted in Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1117 n.8 (1st Cir. 1993), "the copyrights in multiple works may be registered on a single form, and thus considered one work for the purposes of registration . . . while still qualifying as separate 'works' for purposes of awarding statutory damages" (citing 37 C.F.R. § 202.3(b)(3)(A)). Accordingly, relying heavily on the reasoning of Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., the First Circuit held that the infringement in Gamma Audio & Video, Inc. v. Ean-Chea involved four separately produced episodes and awarded statutory damages for each separate episode even though they were registered on the same copyright form. Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d at 1117-18.

Courts in this circuit have previously granted separate awards of statutory damages to U2 Home based on each infringed episode regardless of the fact that some of the episodes were

16

registered on one copyright certificate. Most recently, in <u>U2 Home Entertainment, Inc. v. Melody Elite Enterprises</u>, U2 Home was awarded statutory damages on a per episode basis for 677 works seized on the same day as the seizure that occurred in the instant case. No. 08 CV 3340, 2009 WL 763428, at *2, 4 (E.D.N.Y. Mar. 23, 2009); <u>see also</u> <u>U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.</u>, 2008 WL 3906889, at *12-14 (awarding statutory damages based on a per episode calculation); <u>U2 Home Entm't, Inc. v. Fu Shun Wang</u>, 482 F. Supp. 2d 314, 319 n.5 (E.D.N.Y. 2007) (awarding statutory damages based on a per episode calculation); <u>U2 Home Entm't, Inc. v. Doe</u>, No. 04 CV 4402, 2005 WL 3018702, at *4 (E.D.N.Y. Sept. 3, 2005), <u>report and rec. adopted</u>, No. 04 CV 4402 (E.D.N.Y. Nov. 8, 2005) (awarding statutory damages based on a per episode calculation). In <u>U2 Home Entertainment, Inc. v. China Video, Inc.</u>, No. 04 CV 6139, 2006 U.S. Dist. LEXIS 2788 (S.D.N.Y. Jan. 23, 2006), the court granted statutory damages per infringed episode, explaining that:

> [a]lthough the holding in <u>Gamma</u> is not binding in this circuit, the Court finds <u>Gamma</u> persuasive and applicable to the facts of the instant action because the plaintiff's copyright-protected television programs, which are akin to American soap operas, implicate hundreds of unique episodes, which appear in a series format, as was the case in both <u>Twin Peaks</u> and <u>Gamma</u>.

<u>Id.</u> at *10.

The Court finds that plaintiff's request for minimum statutory damages is appropriate and reasonable, particularly in light of the fact that plaintiff could have requested enhanced damages based on defendant's wilful behavior. Given the large number of copyright infringements at issue here, as well as the defendant's failure to heed the warning provided by the prior lawsuit, the Court finds the sum of $845,250.00 requested by plaintiff to be commensurate with the

17

amounts awarded in the aforementioned cases as a means of deterrence and compensation in cases of repeat offenders. See Basic Books, Inc. v. Kinko's Graphics Corp., 758 F. Supp. 1522, 1545 (S.D.N.Y. 1991) (awarding statutory damages below the maximum value based on the court's discretion and "not attempting to measure the financial loss to the plaintiff but to deter the defendant from future infringing copying").

Accordingly, having considered all of the evidence currently before this Court on this motion for damages, the Court respectfully recommends that damages in the minimum statutory amount of $750 be awarded for each of the 1,127 TVB Series episodes infringed for a total of $845,250.00.

### ii) Trademark Damages

Plaintiff is also entitled to recover damages under the Lanham Act for defendant's use of a counterfeited TAI SENG Trademark. 15 U.S.C. § 1117(a). U2 Home has indicated its willingness to waive its right to such damages if it is awarded the minimum statutory damages requested under the Copyright Act. (Pl. Mem. at 9, n.1). Since the Court has recommended that statutory damages be awarded in this amount for the copyright violations, it is respectfully recommended that no additional damages be awarded for trademark infringement.

### 2) Attorneys' Fees and Costs

In the context of a claim of copyright infringement, the Court, pursuant to Section 505 of Title 17 of the United States Code, may "in its discretion" award "the recovery of full costs by or against the party . . . [and] may also award a reasonable attorneys' fee to the prevailing party as part of the costs." In order for a plaintiff to qualify as a "prevailing party" under the statute, the

plaintiff must succeed on a significant issue in the litigation that achieves some benefit sought in instigating the lawsuit. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Ruggiero v. Krzeminski, 928 F.2d 558, 564 (2d Cir. 1991) (achieving only partial success in lawsuit may still qualify one as prevailing party). Although an award of fees is within the court's discretion, see Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994) (noting that the word "may" in the statute "clearly connotes discretion"), prevailing plaintiffs in copyright cases are no longer automatically awarded fees. See Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d at 1010.

Here, plaintiff, as the prevailing party, may be eligible for an award of attorney's fees, but as with damages for the trademark violation, plaintiff waives its right to recover attorney's fees and costs if it is awarded minimum statutory damages under the Copyright Act. (Pl. Mem. at 18). Since this Court has recommended an award of statutory damages, the Court has not recommended an award of attorney's fees and costs.


C. Permanent Injunction

Plaintiff does, however, seek a permanent injunction under both the Copyright Act and the Lanham Act for defendant's willful infringement of U2 Home's registered copyrights and trademark.

1) Copyright Infringement

The Copyright Act states:

> Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

17 U.S.C.A. § 502(a).  A permanent injunction is appropriate where the court finds a "significant threat that [defendant] would continue to infringe." U2 Home Entm't, Inc. v. Doe, 2005 WL 3018702, at *5 (quoting Basic Books, Inc. v. Kinko's Graphics Corp., 758 F. Supp. 1522, 1542 (S.D.N.Y. 1991)); see also Lauratex Textile Corp. v. Allton Knitting Mills Inc., 519 F. Supp. 730, 731 (S.D.N.Y. 1981) (issuing permanent injunction because of strong probability that defendants would continue to infringe plaintiff's copyright).  In U2 Home Entertainment, Inc. v. Doe, the court granted a permanent injunction against the defendants, who exhibited traits similar to defendant Rong Fa Liang.  2005 WL 3018702, at *5.  Due to the ease with which the defendants in U2 Home Entertainment, Inc. v. Doe were able to reproduce U2 Home's copyrighted works as indicated by the volume of discs seized and the fact that the defendant's business was not a licensed corporation, a permanent injunction was granted against the defendants to enjoin them from both infringement of the works at issue, as well as infringement of future works.  Id. at *5.

Like the defendant in U2 Home v. Doe, the volume of discs seized in this case is high, and defendant's retail businesses are not authorized to do business in New York.  (Compl. ¶ 6).  Moreover, as discussed supra, this defendant is a willful violator, against whom U2 Home has filed suit in the past.  There is precedent in the Second Circuit for awarding injunctive relief where there is a history of continuing copyright infringement and a significant threat of future infringement.  The court in Encyclopaedia Britannica Educ. Corp. v. Crooks noted that courts have enjoined the infringement of future registered works when "equity has required" that they do so. 542 F. Supp. 1156, 1187-88  (W.D.N.Y. 1982) (quoting Ass'n of American Med. Colls. v. Carey, 482 F. Supp. 1358, 1364 n.15 (N.D.N.Y.1980)); see also UMG Recordings, Inc. v.

20

Francis, No. 06 CV 4435, 2007 WL 2438421, at *3 (S.D.N.Y. Aug. 28, 2007); Antenna Television v. Aegean Video Inc., No. 95 CV 2328, 1996 WL 298252 at *12-13 (E.D.N.Y. April 23, 1996); Wow & Flutter Music, Hideout Records and Distribs., Inc. v. Len's Tom Jones Tavern, Inc., 606 F. Supp. 554, 555 (W.D.N.Y. 1985).

In this case, given the nature and history of defendant's infringing activities, this Court finds that there continues to be a "significant threat" that, despite the significant award of damages recommended here for defendant's violation of plaintiff's copyrights, defendant would continue his infringing activities. Thus, it is respectfully recommended that a permanent injunction be granted against defendant Rong Fa Liang, enjoining him and the business entities known as "Ming Ja Audio" and "K&D" from reproducing, selling, or distributing any and all of plaintiff's copyrighted works or participating in any way in the reproduction, sale, or distribution by others of plaintiff's copyrighted works.

2) Trademark Infringement

Plaintiff also seeks equitable relief under the Lanham Act, 15 U.S.C. § 1125(a). In Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76 (2d Cir. 1983), the court awarded a preliminary injunction, finding that under the Lanham Act, "only a likelihood of confusion or deception need be shown in order to obtain equitable relief." Id. at 79. This standard also applies to the issuance of a permanent injunction under the Lanham Act. U2 Home Entm't, Inc. v. Fu Shun Wang, 482 F. Supp. 2d 314, 319 (E.D.N.Y. 2007).

Here, defendant's unauthorized copies of U2 Home's copyrighted works were distributed on discs bearing titles and counterfeit copies of trademarks associated with U2 Home. (Pl. Mem.

at 19; Compl. ¶ 23). Plaintiff asserts, and it has not been disputed, that consumers purchasing defendant's unauthorized copies may be confused as to the source of those products as a result of the counterfeit marks displayed on the defendant's products. Defendant's unauthorized use of plaintiff's trademark may result in consumers associating what plaintiff alleges is the inferior picture and sound quality of the defendant's discs with U2 Home, reflecting negatively on plaintiff's authorized products.

It is thus respectfully recommended that a permanent injunction issue against defendant Rong Fa Liang, enjoining him and the business entities known as "Ming Ja Audio" and "K&D" from the use of plaintiff's registered TAI SENG trademark or participation in any unauthorized use of the TAI SENG trademark by others.

CONCLUSION

Due to the extensive nature of defendant's counterfeiting activities, the sheer number of counterfeit films that have been seized from defendant, and the blatant infringement of plaintiff's trademarks by the use of designations identical to, or substantially indistinguishable from, the TAI SENG trademark on goods covered by the registration for that trademark, this Court is convinced that substantial damage has been done to U2 Home. There is a need for a significant deterrent in this case. Based on the evidence presented by U2 Home, which has not been refuted, it appears that defendant Rong Fa Liang has continually infringed plaintiff's copyrights and trademark during the past three years. Given defendant's knowing and willful violation of U2 Home's copyrights, this Court respectfully recommends that the minimum statutory amount of $750 be awarded for each of the 1,127 episodes infringed for a total damage award of

22

$845,250.00. Additionally, the Court recommends that defendant Rong Fa Liang be enjoined from unauthorized reproduction and distribution of any and all of U2 Home's copyrighted works, and that defendant be enjoined from the unauthorized use of plaintiff's registered trademark.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
July 31, 2009

Cheryl L. Pollak
United States Magistrate Judge